UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| TAURUS LEWIS, ) | Civil Action No.: 3:16-cv-2884-MGL-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| RICHLAND COUNTY RECREATION ) | |
| COMMISSION, JAMES BROWN, III, ) | |
| TARA DICKERSON and DAVID ) | |
| STRINGER, in their individual capacities, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.     INTRODUCTION

This action arises out of Plaintiff's employment with the Richland County Recreation Commission. Plaintiff alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq., and state law causes of action for defamation and civil conspiracy. Presently before the court is Defendants' Motion to Dismiss (Document # 5) Plaintiff's claims for defamation and civil conspiracy. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

## II.     FACTUAL ALLEGATIONS

At all times relevant to the allegations in the amended complaint, Plaintiff, an African-American male, was employed by the Richland County Recreation Commission (RCRC) as the Division Head of Facility Operations. Am. Compl. ¶ 1. Defendant Brown is the Executive Director

of the RCRC, Defendant Stringer is the Division Head of Human Resources for the RCRC, and Defendant Dickerson is the Chief of Staff of the RCRC. Am. Compl. ¶¶ 3-5. Plaintiff has been employed with the RCRC for approximately fifteen years. Prior to December of 2015, he reported to the Assistant Executive Director, who reported to Brown, the Executive Director. Am. Compl. ¶ 9. Plaintiff alleges that Brown would often tell him things such as Plaintiff is "too nice and everyone likes him," and that Brown wanted Plaintiff to "treat them like slaves and whip them into shape." Am. Compl. ¶ 10. Plaintiff alleges that Brown would often make threats of termination, veiled or otherwise, in an attempt to encourage Plaintiff to take certain actions that Brown desired. Brown would tell Plaintiff to "think about his family" or "think about his future," which Plaintiff understood as threats of demotion or termination if Plaintiff did not do what Brown wanted him to do. Plaintiff alleges that these threats usually occurred in circumstances where Brown wanted to protect and insulate his family members and friends that worked at the RCRC. Am. Compl. ¶ 11.

On November 30, 2015, Brown called a meeting with Plaintiff and the Assistant Executive Director, Kenya Bryant[1], during which Brown stated that they did not have faith in him anymore. Am. Compl. ¶ 12. Plaintiff alleges that on December 4, 2015, Brown told RCRC employees that he would fire both Plaintiff and Bryant. Am. Compl. ¶ 13. On December 11, 2015, an investigation into sexual harassment claims made against Brown began. Stringer informed Plaintiff he would likely be called as a witness. Am. Compl. ¶ 14. Plaintiff participated in the investigation upon request, and both Brown and Stringer were aware that Plaintiff spoke with the investigator. Am. Compl. ¶ 15.

---

[1] The complaint identifies Taurus Lewis as the Assistant Executive Director, but this appears to be a scrivener's error. See Bryant v. Richland County Recreation Commission, et al., 3:16-cv-2885-MGL-TER. Taurus Lewis is the plaintiff in this action.

On January 16, 2016, Brown called an unscheduled staff meeting during which, Plaintiff alleges, he acted hostile and made threats and inappropriate statements. Plaintiff alleges that during the meeting Brown announced that the RCRC Board wanted there to be a buffer between him and the staff and that Dickerson was promoted to a newly created position of Chief of Staff. Among other threats and inappropriate statements, Plaintiff alleges that Brown stated if he witnessed staff speaking to Plaintiff he would suspend them for five days or fire them. Am. Compl. ¶ 18. Plaintiff alleges Brown said a board member told him that "black people don't listen to black people" and that he needs a white face, i.e., Dickerson, to "crack the whip" on the black people. Am. Compl. ¶ 19. Once Dickerson was appointed as Chief of Staff, Plaintiff began reporting to her instead of the Assistant Executive Director. Am. Compl. ¶ 20.

Plaintiff alleges that on March 21, 2016, the Board[2] met for their regularly scheduled meeting and took an executive session to discuss a personnel matter. No action was taken, but a special called meeting was scheduled for April 4, 2016. Am. Compl. ¶ 21. On April 4, 2016, the Board met to discuss the personnel matter in executive session. Board Member Furgess motioned to support Brown, which passed with a 5-2 vote. Am. Compl. ¶ 22.

On April 5, 2016, Plaintiff was suspended with pay from his position because of an investigation regarding comments allegedly made by Plaintiff to another RCRC employee, which

---

[2]In 2014, the board received anonymous letters complaining about Brown and the RCRC, but Brown made it clear that he had at least four votes on the board to avoid any action against him. He stated that he helped Marie Green and Barbara Mickens, members of the board, financially and that other members of the board, Furgess and Martin, were on his side. On September 22, 2014, a motion was passed by a 5-2 vote to hire an attorney to conduct an investigation of Brown. However, Martin and Furgess later rescinded their vote and a new motion to rescind the earlier decision for an investigation, passed by a 4-3 vote. Am. Compl. ¶ 16.

Plaintiff denies, that Brown was about to be terminated due to videos on social media. Plaintiff's badge, cell phone and keys were taken and his email was disabled. Plaintiff alleges that Brown, Stringer, and Dickerson, and others pressured and threatened an RCRC employee into giving a false statement about Plaintiff so it could be used to terminate him. Plaintiff alleges the employee later recanted his statement and said that it was false. Am. Compl. ¶ 23.

Plaintiff informed Stringer that he would like to meet with his attorney present to discuss the alleged comment. Plaintiff alleges that instead of meeting to investigate the comment, Stringer and Dickerson issued a letter to Plaintiff dated April 14, 2016, which demoted Plaintiff effective April 22, 2016, from the Division Head of Facility Operations to Director of Maintenance, where he would work new hours (7:30-3:30), report to the Maintenance Shop, and wear a uniform. Stringer and Dickerson gave Plaintiff until 5:00 the following day to consider the position. Am. Compl. 24. Plaintiff alleges that he suffered situational anxiety and depression as a result of his treatment by Defendants, and his doctor placed him on medical leave beginning April 14, 2016. Am. Compl. ¶ 25.

On April 14, 2016, Stringer sent Plaintiff another letter regarding Plaintiff's medical leave, in which he stated that Plaintiff was not a "key employee" and RCRC had not determined that restoring him to employment at the conclusion of the medical leave would cause substantial and grievous economic harm to the agency. Am. Compl. ¶ 27. Plaintiff filed a grievance as to the demotion, stating that it was unfounded and retaliatory. Am. Compl. ¶ 26. Plaintiff alleged that the action was merely an excuse for Defendants to terminate him and further retaliate. Am. Compl. ¶ 28. On May 17, 2015, Plaintiff was notified that he was now considered a "key employee" under the FMLA and that reinstating him to the Division Head position would result in substantial and

grievous economic injury to RCRC operations. They also informed Plaintiff that the demoted Director position was no longer available. Am. Compl. ¶ 29.

Plaintiff alleges that RCRC and Brown and Stringer and other RCRC officials published false statements to other RCRC employees, Board members, and others, accusing Plaintiff of spreading rumors and false information about Brown. Plaintiff alleges they also accused Plaintiff of insubordination and incompetence. Am. Compl. ¶ 31.

### III. STANDARD OF REVIEW

Defendants seek dismissal of Plaintiff's defamation and civil conspiracy claims pursuant to Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

> Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:
>
> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A

-5-

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003). The court may consider documents attached to a complaint or motion to dismiss "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir.2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir.2006)).

## IV.     DISCUSSION

### A.     Defamation

In his defamation claim, Plaintiff alleges that Defendants RCRC, Brown and Stringer falsely accused him of going to a park and telling another RCRC employee that Brown was going to be terminated for videos on social media. He also alleges that these Defendants made comments about Plaintiff being insubordinate and incompetent. Plaintiff alleges that these defamatory remarks were published to his coworkers, Board members, and others. Plaintiff further alleges that his suspension, including the removal of his badge, cell phone, keys, and email, further implied a defamatory inference by way of actions in addition to words that Plaintiff was guilty of improper behavior. Plaintiff alleges that the defamatory actions and words by Brown and other RCRC personnel were made within the course and scope of their employment and have directly and indirectly presented to the public at large the false insinuation that Plaintiff is insubordinate and unfit in his profession. Plaintiff alleges that this portrayal is false and made with malicious intent to harm him and in reckless disregard of the truth. Am. Compl. ¶¶ 23, 55-57.

The essential elements of a claim for defamation under South Carolina law are 1) a false and

defamatory statement; 2) unprivileged publication to a third party by defendant; 3) fault on the part of the defendant publisher; and 4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Erickson v. Jones Street Publishers, LLC, 368 S.C. 444, 455, 629 S.E.2d 653, 664 (2006). With respect to the fourth element, defamation that is actionable irrespective of special harm is defamation per se, which includes defamatory statements regarding 1) the commission of a crime, 2) contraction of a loathsome disease, 3) adultery, 4) unchastity, or 5) unfitness in one's business or profession. Fountain v. First Reliance Bank, 398 S.C. 434, 442, 730 S.E.2d 305, 309 (S.C.2012) (citing Goodwin v. Kennedy, 347 S.C. 30, 36, 552 S.E.2d 319, 322-23 (S.C.Ct.App.2001)). Defamatory communications can be accomplished by actions or conduct in addition to spoken words. Erickson v. Jones Street Publishers, LLC, 368 S.C. 444, 465, 629 S.E.2d 653, 664 (2006).

     Defendants argue that Plaintiff has failed to state a claim for defamation that is plausible on its face because Plaintiff has only included a formulaic recitation of the elements necessary for such a claim without any factual allegations in support. When reviewing a motion to dismiss, the court must view the factual allegations and all reasonable inferences in favor of the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir.2009). In support of his allegations that these Defendants' defamatory words and actions created the false insinuation that Plaintiff is insubordinate and unfit in his profession, Plaintiff includes the factual allegations that these Defendants knowingly published a false accusation that Plaintiff stated Brown was going to be fired, "pressured and threatened an RCRC employee into making" the false accusation, which the employee later recanted as false and made under duress, and then suspended him based upon the false accusation, including removing of his badge, cell phone, keys, and email. Am. Compl. ¶ 23.

These factual allegations are sufficient to state a plausible claim for defamation.

Defendants also argue that any alleged comments made by Brown to other employees of the RCRC enjoy a qualified privilege. "A communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable." Murray v. Holnam, Inc., 344 S.C. 129, 140-41, 542 S.E.2d 743, 749 (SC.Ct.App. 2001) (citing Constant v. Spartanburg Steel Prods., Inc., 316 S.C. 86, 447 S.E.2d 194 (1994); Prentiss v. Nationwide Mut. Ins. Co., 256 S.C. 141, 181 S.E.2d 325 (1971)). "Communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business." Id. (citing Conwell v. Spur Oil Co., 240 S.C. 170, 125 S.E.2d 270 (1962)). Defendants argue that, because other employees came forward and informed Brown that Plaintiff was saying he was going to be fired, RCRC had a duty to investigate the alleged statements by Plaintiff. However, "the protection of a qualified privilege may be lost by the manner of its exercise. . . . [F]or a communication to be privileged, the person making it must be careful to go no further than his interests or his duties require." Id. (citations omitted). The question of whether the privilege has been abused is one for the jury, Id. at 140, 542 S.E.2d at 749, and, thus, a determination of whether Brown's alleged defamatory statements were privileged cannot be made at this stage of the litigation.

Finally, Defendants argue that Plaintiff cannot name both the RCRC and Brown on this cause of action because Brown is an agent of the RCRC and, thus, under the South Carolina Tort Claims Act (SCTCA), S.C.Code Ann. §§ 15–78–10 et seq., the RCRC is the only proper party. Section 15-78-70(a) of the SCTCA provides that "an employee of a governmental entity who commits a tort

while acting within the scope of his official duty is not liable therefore except as expressly provided for in subsection (b)." Subsection (b) provides that "[n]othing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." Defendants argue that none of the exceptions provided in subsection (b) apply here.  Plaintiff alleges that Defendant Brown made the alleged defamatory statements with "malicious intent to harm," Am. Compl. ¶ 57, but Defendants argue that this is just a formulaic recitation of the law without any factual allegations in support. As stated above, the court must view all factual allegations and the reasonable inferences therefrom in favor of the plaintiff. Here, Plaintiff has provided sufficient factual allegations of actual malice to state a claim that would take the defamation cause of action outside the SCTCA such that Brown could be held personally liable. In the alternative, if no actual malice is found, RCRC could be held liable for the alleged defamatory statements made by Brown. See Murray, 344 S.C. at 542 S.E.2d at 748 (noting that "a principal may be held liable for defamatory statements made by an agent acting within the scope of his employment or within the scope of his apparent authority"); see also Rule 8(d)(2) and (3) (allowing for the pleading of alternative theories of recovery). Thus, dismissal of Plaintiff's defamation cause of action is not appropriate.

### B.     Civil Conspiracy

In his civil conspiracy claim, Plaintiff alleges that Defendants Brown, Stringer, and Dickerson and others met at various times and places, schemed, conspired, and planned in secret, outside the scope of their official duties and supervisory roles, to harass and target Plaintiff in an effort to harm him and cause him to be isolated, weaken his authority as a Division Head, and lose

his position with RCRC.  Plaintiff alleges that Brown had personal motivations to harm Plaintiff because Plaintiff opposed Brown's directives and participated in an investigation into claims of sexual harassment made against Brown.  Plaintiff alleges that Stringer and Dickerson were personally motivated to support Brown and joined with him in the conspiracy against Plaintiff.  He alleges that these Defendants used their respective positions of authority to isolate Plaintiff, strip him of responsibilities and set him up with a suspension in an effort to terminate his employment. Plaintiff alleges that these Defendants participated in this conspiracy as part of a personal and malicious agenda to cause Plaintiff special harm, including causing him to be ostracized and isolated in the work environment, extreme emotional suffering, embarrassment, humiliation, and attorneys' fees and costs.  Am. Compl. ¶¶ 59-64.

In South Carolina, the tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. Vaught v. Waites, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct.App.1989).  Defendants first argue that Plaintiff's civil conspiracy claim fails because she fails to allege special damages caused by the alleged conspiracy.  "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint," and "because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other cause of action." Hackworth v. Greywood at Hammett, LLC, 385 S.C. 110, 682 S.E.2d 871, 874 (2009) (internal citations omitted). While general damages "are the immediate, direct, and proximate result of the" tortfeasor's conduct, special damages "are the natural, but not the necessary or usual, consequence of the" tortfeasor's conduct. Id. at 116–17, 682 S.E.2d at 875.  Plaintiff specifically alleges that the alleged conspiracy by the individual Defendants

"cause[d] him special damages, including causing him to be ostracized and isolated in the work environment, extreme emotional suffering, embarrassment, humiliation, and his employment, as well as incurring attorneys' fees and costs." Am. Compl. ¶ 64. Plaintiff does not allege that he suffered ostracization, isolation, embarrassment, or humiliation with respect to his other causes of action. Thus, his allegations of special damages arising from the alleged civil conspiracy are sufficient to survive a Rule 12(b)(6) motion.

Defendants also argue that Plaintiff, as an at-will employee, cannot maintain an action for civil conspiracy against his employer. Under Ross v. Life Ins. Co. of Virginia, 273 S.C. 764, 765, 259 S.E.2d 814, 815 (1979), an at-will employee may not maintain a civil conspiracy action against his employer where the employee alleges that his employer conspired with others to terminate his employment. See also Faile v. Lancaster County, S.C., No. 0:11-cv-2206-CMC, 2013 WL 786447, *4 (D.S.C. Mar. 1, 2013) (holding that an at-will employee cannot sue his employer "or anyone acting within his authority on behalf of his employer" for civil conspiracy arising out of his termination). However, in Reed v. Aiken County, No. 1:09-cv-1744-MBS-TER, 2010 WL 2985805, *3 (D.S.C. July 26, 2010), the court held that "the at-will employment doctrine articulated in Angus [v. Burroughs & Chapin Co., 368 S.C.167, 628 S.E.2d 261 (S.C.2006)] and Ross does not govern actions by employees based on harm other than termination such as isolation and ostracization." Although Plaintiff does allege that the individual Defendants conspired to strip him of responsibilities and set him up with a suspension in an effort to terminate his employment, he also alleges that they conspired to cause him ostracization, isolation, humiliation, and embarrassment. These allegations are sufficient to allege a conspiracy beyond termination, and, therefore, dismissal of this cause of action at this stage of the litigation against is premature.

Finally, Defendants argue that Plaintiff's civil conspiracy claim fails based upon the intercorporate conspiracy doctrine, which provides that a corporation cannot conspire with itself. See McClain v. Pactiv Corp., 360 S.C. 480, 486, 602 S.E.2d 87, 90 (S.C.Ct.App. 2004) (citing Anderson v. S. Ry. Co., 224 S.C. 65, 69, 77 S.E.2d 350, 351 (1953)). However, this doctrine applies to "a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." McMillan v. Oconee Mem'l Hosp., Inc., 367 S.C. 559, 565, 626 S.E.2d 884, 887 (2006); see also Cricket Cove Ventures, LLC v. Gilland, 390 S.C. 312, 325, 701 S.E.2d 39, 46 (Ct. App. 2010) ("In McMillan, our Supreme Court limited this 'intracorporate conspiracy' doctrine to persons acting within the scope of their employment."). Plaintiff alleges that the individual Defendants were "acting outside of the course and scope of their employment" to cause special damages to Plaintiff. Am. Compl. ¶ 64. The Plaintiff further alleges that the civil conspiracy "was done as a part of a personal and malicious agenda to harm the Plaintiff." Id. These facts are sufficient to survive dismissal at this stage of the litigation.

Because Plaintiff has pleaded factual allegations that are sufficient to state a claim that is plausible on its face for both defamation and civil conspiracy, Defendants' motion to dismiss should be denied.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss (Document # 5) be denied.

       s/Thomas E. Rogers, III
       Thomas E. Rogers, III
       United States Magistrate Judge

October 31, 2016
Florence, South Carolina